UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **LIST INDUSTRIES, INC.,** )<br>)<br>         Plaintiff, )<br>    v. )<br>)<br>**UNITED STATES,** )<br>)<br>         Defendant. )<br>) | Court No. 21-00521 |

**COMPLAINT**

List Industries, Inc., ("List" or "Plaintiff") through its attorneys, alleges and states as follows:

**JURISDICTION**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c), as this action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(i).

2. Plaintiff contests certain factual findings and legal conclusions in the United States Department of Commerce's ("Commerce" or "the Department") less than fair value investigation of <u>Certain Metal Lockers and Parts Thereof From the People's Republic of China</u> (Case No. A-570-133). The Department's final determination was published as <u>Certain Metal Lockers and Parts Thereof From the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value</u>, 86 Fed. Reg. 35,737 (Dep't Commerce July 7, 2021) (hereinafter, "<u>Final Determination</u>") and the accompanying <u>Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Certain Metal Lockers and Parts Thereof from the People's Republic of China</u> (Dep't

Commerce June 28, 2021) (hereinafter, "Issues and Decision Memorandum").  Following the U.S. International Trade Commission's issuance of its final affirmative injury determination,[1] Commerce published an antidumping duty order on imports of certain metal lockers and parts thereof from China.  See Certain Metal Lockers and Parts Thereof From the People's Republic of China: Antidumping and Countervailing Duty Orders, 86 Fed. Reg. 46,826 (Dep't Commerce Aug. 20, 2021) (hereinafter, the "Order").

## STANDING OF PLAINTIFF

3. Plaintiff is a manufacturer and producer in the United States of the domestic product that is like the subject metal lockers from China.  Plaintiff was the Petitioner in the underlying agency investigation and actively participated in the investigation as party to the proceeding.  As such, Plaintiff is an interested party within the meaning of section 771(9)(C) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(C), and Plaintiff has standing to bring this action pursuant to 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4. The Order issued as result of Commerce's Final Determination and the USITC Final Determination (86 Fed. Reg. 46,714 (Aug. 19, 2021)).  Pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and U.S.C.I.T. Rule 3(a), a Summons was filed within 30 days of the date on which the Order was published in the Federal Register (see ECF No. 1, dated Sept. 17, 2021) and this Complaint is being timely filed within 30 days of the filing of the Summons.

---

[1] Metal Lockers from China, 86 Fed. Reg. 46,714 (USITC Aug. 19, 2021) (hereinafter, "USITC Final Determination").

## STATEMENT OF CLAIMS AND BASIS FOR RELIEF

## COUNT I

5. Paragraphs 1 through 4 above are realleged and incorporated herein by reference.

6. In antidumping investigations of imports from a non-market economy ("NME") country, Commerce calculates normal value on the NME producer's factors of production using a surrogate market economy country or countries that, pursuant to section 773(c)(4) of the Act, the Department considers to be "at a level of economic development comparable to that of the non-market economy country" and a "significant producer of comparable merchandise." Issues and Decision Memorandum at 11 (citing 19 U.S.C. § 1677b(c); 19 CFR § 351.408).

7. The statute requires that the valuation of the factors of production "be based on the best available information regarding the values of such factors in a market economy country or countries considered to be appropriate by the administering authority." 19 U.S.C. § 1677b(c)(1).

8. In its final determination, Commerce determined that "Turkey and Mexico are both at the same level of economic development as China and qualify as significant producers of comparable merchandise . . .." Issues and Decision Memorandum at 12.

9. Moreover, Commerce found "the only complete, audited financial statements on the record" were those of Grupo Carso S.A.B. de C.V. ("Grupo Carso"), a Mexican company, and Ayes Celikhasir VE CT ("Ayes"), a Turkish company. Id.

10. The Department concluded, however, that "Grupo Carso is not a producer of merchandise comparable to metal lockers," while Ayes "produces merchandise comparable to

the subject merchandise, and that {Ayes's} audited financial statements constitute the only information on the record suitable for the determination of surrogate financial ratios specific to metal locker production." Id. at 13.

11. Accordingly, Commerce determined that "Turkey is the only country that has usable financial statements on the record from a comparable producer for the purposes of valuing surrogate financial ratios." Id. at 14.

12. Commerce's rejection of Grupo Carso as a producer of merchandise comparable to metal lockers was not supported by substantial evidence.

13. The record shows that Grupo Carso does produce comparable merchandise to the subject metal lockers, including a wide range of industrial products (e.g., metal containers and structures for construction).

14. For instance, Grupo Carso produces metallic structures for bridges, buildings and mining branches; heat exchangers; pressure vessels; distillation towers; air coolers; surface capacitors; high pressure feed water heaters; and large containers. In their case brief, Petitioners explained that many of these products "involve materials and processes similar to metal lockers."

15. "To determine if a product produced by a company in the surrogate country is comparable, Commerce's established practice is to apply a three-part test that examines 'physical characteristics, end uses, and production processes.'" Shanghai Foreign Trade Enterprises Co. v. United States, 318 F. Supp. 2d 1339, 1348 (Ct. Int'l Trade 2004).

16.     In its Final Determination, Commerce stated that "{t}he record lacks sufficient information to demonstrate that Grupo Carso produces anything with similar physical characteristics or end uses comparable to metal, or that Grupo Carso uses a similar production process to that of the metal lockers under investigation." Issues and Decision Memorandum at 12-13.     Although the Department acknowledged Grupo Carso "manufacture{d} large containers," the Department stated "the record lacks any evidence regarding the physical characteristics, end uses or the production process for such containers." Id. at 13.

17.     By contrast, the Department found Ayes – which produces mesh fences, steel mesh, ribbed iron, and certain machines – did produce merchandise comparable to lockers. Id. at 12.  Notably, the scope of the antidumping duty order specifically excludes certain "wire mesh lockers."  Order, 86 Fed. Reg. at 46,829.

18.     The Department failed to explain, however, how the physical characteristics, end uses, and production processes of products like mesh fences, steel mesh, ribbon iron and certain machines produced by Ayes were comparable to metal lockers.  Nor did the Department explain why these products were more comparable to metal lockers than products like air coolers, surface capacitors, water heaters, and large containers produced by Grupo Carso.

19.     The Department's failure to explain its disparate treatment of the products produced by Ayes and Grupo Carso lacks a rational connection between the Department's conclusion and the evidence in the record.

20. Accordingly, the Department's summary rejection of Grupo Carso as a producer of comparable merchandise was not supported by substantial evidence and is not otherwise in accordance with law.

## COUNT II

21. Paragraphs 1 through 20 are realleged and incorporated herein by reference.

22. The Department's conclusion that "Ayes is a profitable company," (Issues and Decision Memorandum at 16) is not supported by substantial evidence.

23. A positive pre-tax profit is a prerequisite for Commerce to consider a company as the basis for determining surrogate financial ratios. The pre-tax profit of TL 1,984,287 that is reflected in Ayes's 2019 consolidated financial statements would not have occurred without amounts listed as "other real operating income" and "income from investing activities" not related to normal production operations.

24. In its Preliminary Determination, Commerce excluded most line items categorized as "Other real operating income" in calculating Ayes's selling, general and administrative ("SG&A") ratios because Ayes's "financial statements neither describe{d} nor discuss{ed} how this income is associated with the general operations of the company." These "other real operating income" items included deferred finance income, incentive income, shipping revenues, provisions no longer required, exchange difference income, price difference, and other income and profits. Commerce also preliminarily excluded line items categorized as "Income from Investing Activities" listed as securities value increase profits and rental income.

25. The exclusion of Ayes's income from investing activities in the Preliminary Determination was consistent with Commerce's practice to exclude income from long-term financial assets because such income is related to investing activities and is not associated with the general operations of the company. These line items include interest income, securities value increase profits, and rental income.

26. In their case brief, Petitioners argued that the Department should have also removed these line items (i.e., certain items categorized as other real operating income and income from investment activities) from Ayes's profit – thereby recognizing that Ayes would not have had a positive pre-tax profit without the total income of TL 5,587,695 associated with income not properly associated with the general operations of Ayes.

27. Specifically, in instances where the Department can identify, from the face of the financial statement, line items that should be excluded as offsets to SG&A and interest expenses, the Department "will also remove those line items from profit." Certain New Pneumatic Off-the-Road Tires from the People's Republic of China: Final Results of the 2009–2010 Antidumping Duty Administrative Review and Final Rescission, in Part, 77 Fed. Reg. 14,495 (Mar. 12, 2012), and accompanying Issues and Decision Memorandum at Comment 7.

28. However, in its final determination, the Department failed to remove these line items from Ayes's profit.

29. Instead, with respect to "Other real operating income," the Department re-classified these line items as offsets to SG&A expenses, without any record basis for doing so. The Department baldly stated that it had "come to understand that the term, 'real operating

income,' in audited financial statements means that the relevant expense categories apply to the general operations of the company." The Department cited no evidence to support the basis for that understanding generally or in this case.

30. With respect to income from investing activities, the Department (1) continued to exclude interest income from Ayes's financial ratios because Commerce was "unable to identify whether the interest income is short-term or long-term in nature," but failed to adjust Ayes's profit for this line item; (2) reclassified securities value increase in profits as an offset to profit; and (3) reclassified rental income as an offset to SG&A. Issues and Decision Memorandum at 16.

31. The Department did not adequately explain the re-classification of these income line items as offsets SG&A, nor does the record support such a re-classification.

32. When other real operating income and interest income from investing activities are properly deducted from Ayes's profit, Ayes's 2019 financial statements demonstrate that Ayes was not profitable.

33. "Commerce's practice is to decline to use financial statements of companies that are not profitable." Canadian Solar Int'l Ltd. v. United States, 378 F. Supp. 3d 1292, 1315 (Ct. Int'l Tr. 2019). Thus, the Department should have declined to use Ayes' financial statements.

34. Even if the Department was not required to reject Ayes's financial statements, the Department's decision to rely on surrogate value financial statements of a company that is only profitable because of high-value income items not related to production operations is not supported by substantial evidence and is not otherwise in accordance with law.

**COUNT III**

35. Paragraphs 1 through 34 are realleged and incorporated herein by reference.

36. "{W}hen several countries are both at a level of economic development comparable to the nonmarket economy country and significant producers of comparable merchandise, Commerce evaluates the reliability and completeness of the data in the similarly-situated surrogate countries and generally selects the one with the best data as the primary surrogate country." Jiaxing Bro. Fastener Co. v. United States, 822 F. 3d 1289, 1294 (Fed. Cir. 2016).

37. The Department's selection of Turkey over Mexico as the primary surrogate country was not supported by substantial evidence and not in accordance with law.

38. First, the Department's finding that "the selection of Mexico does not offer a complete set of information from which to derive SVs and surrogate financial ratios," (Issues and Decision Memorandum at 13), is predicated on the Department's erroneous conclusion that Grupo Carso is not a producer of comparable merchandise. See Count I.

39. Second, the Department's conclusion that a discrepancy in the Mexican surrogate values renders the record "incomplete with respect to SVs from Mexico," and "further supports {Commerce's} decision to continue to use Turkey as the primary surrogate country in this investigation" (Issues and Decision Memo at 13), is unsupported by the record.

40. Specifically, the alleged misclassification concerned respondent Zhejiang Xingyi Metal Products Co., Ltd./Xingyi Metalworking Technology (Zhejiang) Co., Ltd.'s (collectively, "Zhejiang Xingyi") reported consumption of a cold-rolled steel sheet input (COLD_GDG_56),

which Zhejiang Xingyi claimed should have been classified under HTS number 7211.29 but which Petitioners proposed classifying based on a value derived from imports into Mexico under HTS number 7209.16.  Id.

41. The slight difference in classifications for a particular input is not dispositive as to the suitability of one surrogate country over another.  Commerce could have either extracted the corrected data itself using its own resources (i.e., its subscription to the Global Trade Atlas service used to derive import values) or followed its normal practice of informing parties of data deficiencies and allowing them to submit corrections or clarifications.  The Department, however, failed to do either.

42. Third, the Department disregarded other surrogate values for Mexico that were qualitatively better than surrogate values for Turkey.

43. For instance, the data provided by the respondents for Turkey included non-contemporaneous information for labor (2018), electricity (2019), natural gas (2019) and water (2019).  Data provided for Mexico, meanwhile, was for 2020 (or the POI in the case of labor, electricity and natural gas), and included rates that were updated as recently as January 2020 for water.

44. "Commerce believes that, when available in a reliable form representative of the factor of production in question, valuation information contemporaneous with a period of investigation or review generally constitutes the best information."  Shakeproof Assembly Components Div. of Illinois Tool Works, Inc. v. United States, 30 C.I.T. 1173, 1177 (2006) (emphasis added), aff'd, 228 Fed. Appx. 1001 (Fed. Cir. July 16, 2007) (per curiam)

45. In its Final Determination, however, the Department disregarded the fact that the Turkish data contained less contemporaneous data than Mexico based solely on the Department's erroneous finding that "the Grupo Carso financial statements {do} not {reflect} a producer of comparable merchandise." Issues & Decision Memorandum at 13.

46. Grupo Carso's product lines also include products that are more similar to metal lockers than are any products of Ayes. See Count I.

47. Similarly, the financial ratios submitted for Mexican producer Grupo Carso are superior to those of the Turkish producer, Ayes. While Grupo Carso's financial statements reflect a positive, pre-tax profit, Ayes's positive profit occurred only because of various income items that should have been excluded from its pre-tax profit. See Count II.

48. Accordingly, the Department's conclusion that the surrogate values for Turkey on the record represented "the best available data" over the surrogate values from Mexico was not supported by substantial evidence or in accordance with law.

## COUNT IV

49. Paragraphs 1 through 48 are realleged and incorporated herein by reference.

50. In selecting surrogate values, Commerce's practice is to select financial statements that are "completely translated, publicly available, contemporaneous with the POI, show a profit before taxes, do not contain countervailable subsidies, are sufficiently detailed to calculate financial ratios, and are from the primary surrogate country." Certain Quartz Surface Products from the People's Republic of China: Final Affirmative Determination of Sales at Less

Than Fair Value, and Final Affirmative Determination of Critical Circumstances, 84 Fed. Reg. 23767 (May 23, 2019), and accompanying Issues and Decision Memorandum at 81-82.

51. However, "Commerce has the statutory authority to use multiple surrogate countries . . . Therefore, it is not sufficient for Commerce to cite the policy of using a single surrogate country where, as here, there is reason to believe that the primary surrogate country may not provide the best available information for a particular FOP." Camau Frozen Seafood Processing Imp. Exp. Corp. v. United States, 929 F. Supp. 2d 1352, 1355 (Ct. Int'l Trade 2013)

52. Even if Commerce's decision to select Turkey as the primary surrogate country was supported by substantial evidence and in accordance with law, Commerce's decision not to use the financial statements of Grupo Carso to calculate surrogate financial ratios was not supported by substantial evidence because the Grupo Carso data is superior to the Ayes data.

53. First, the financial statements of Ayes represent a company that is unprofitable, or, at the very least, only profitable because of high-value income items not related to production operations. See Count II. The financial statements of Grupo Carso, meanwhile, reflect a positive, pre-tax profit.

54. Second, the financial statements of Ayes are far less detailed than are the financial statements of Grupo Carso. Ayes's presentation listed virtually no details of the amounts underlying the materials, labor and energy ("MLE") costs, with the vast majority of the MLE costs classified simply as "Cost of Products Sold."

55. Grupo Carso, on the other hand, clearly distinguished the typical NME components, including "Wages and salaries," "Employee benefits," "Raw materials,"

"Electricity," and "Statutory employee profit sharing."  Grupo Carso's cost of sales also details numerous additional costs normally included in factory overhead, including manufacturing depreciation, amortization, maintenance, security services, and leasing costs.  None of these costs were detailed by Ayes, which alleged an overhead ratio of less than one percent.

56. In its Final Determination, the Department failed to appropriately address this discrepancy in detail between the two financial statements.  Instead, the Department claimed "{t}here is no requirement that the financial statements be the most detailed financial statements on the record," and refused to consider whether the significant detail of Grupo Carso's financial statements made Grupo Carso a more suitable company for the Department's surrogate value analysis.  <u>Issues and Decision Memorandum</u> at 16.

57. The Department's failure to consider the record evidence that Ayes's financial statements were unsuitable, or at least less suitable than those of Grupo Carso, renders the Department's final determination that Ayes's financial statements represented the best available information for valuing factors of production both unsupported by substantial evidence and not in accordance with law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Hold Commerce's <u>Final Determination</u> is not supported by substantial evidence and is not otherwise not in accordance with law with respect to the claims advanced by the Plaintiff in this Complaint;

    (b)    Remand the <u>Final Determination</u> to Commerce with instructions to correct the errors set forth in this Complaint; and

    (c)    Provide such other relief as this Court deems just and appropriate.

    Respectfully submitted,

<u>/s/  Kathleen W. Cannon</u>
KATHLEEN W. CANNON
R. ALAN LUBERDA
ELIZABETH C. JOHNSON
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Plaintiff

Dated:  October 14, 2021

## CERTIFICATE OF SERVICE AND NOTICE TO INTERESTED PARTIES

### List Industries v. United States
### CIT Court No. 21-00521

Pursuant to Rule 3(f) of the Rules of the Court of International Trade, I, Kathleen W. Cannon, hereby certify that on October 14, 2021, copies of the foregoing Complaint was served upon the following individuals and notified all the interested parties who were a party to the proceeding below, by certified or registered mail, return receipt requested:

**UPON THE UNITED STATES**

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278-0001

Bryan M. Boynton
Acting Attorney General, Civil Division
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, N.W., Room 12124
Washington, DC 20530

**UPON THE U.S. DEPARTMENT OF COMMERCE**

General Counsel
U.S. Department of Commerce
14th Street & Constitution Avenue, N.W.
Washington, DC 20230

Ms. Evangeline Keenan, Esq.
Director, APO/Dockets Unit
U.S. Department of Commerce
14th Street & Constitution Avenue, N.W.
Room 1874
Washington, DC 20230

**On behalf of Central Purchasing, LLC dba Harbor Freight Tools, Zhejiang Xingyi Metal Products Co., Ltd., Xingyi Metalworking Technology (Zhejiang) Co., Ltd., and Hangzhou Zhuoxu Trading Co., Ltd.**

Brady W. Mills, Esq.
Morris, Manning & Martin, LLP
1401 I Street, NW, Suite 600
Washington, DC 20005
Phone: 202-408-5153
Email: bmills@mmmlaw.com

**On behalf of Pinghu Chenda Storage Office Co., Ltd**

Bruce M. Mitchell, Esq.
Grunfeld Desiderio Lebowitz Silverman
  & Klestadt LLP
1201 New York Avenue NW, STE 650
Washington DC 20005
Phone: 2125574000
Email: bmitchell@gdlsk.com

**On behalf of WEC Manufacturing, LLC**

Camelia C. Mazard, Esq.
Doyle, Barlow & Mazard, PLLC
1776 K St. NW, Suite 200
Washington, DC 20006
Phone: 202-589-1837
Email: cmazard@dbmlawgroup.com

**On behalf of Home Depot USA Inc.; Zhongshan Geelong Manufacturing Co Ltd., Geelong Sales (Macao Commercial Offshore) Limited, also known as Geelong Sales (Macao Commercial) Limited, and Geelong Sales Co. International (HK) Ltd.**

Jeffrey S. Grimson, Esq.
Mowry & Grimson PLLC
5335 Wisconsin Avenue NW, Suite 810
Washington, DC 20015
Phone: 202-688-3610
Email: jsg@mowrygrimson.com

**On behalf of Luoyang Steelart Office Furniture Co., Ltd**

David Craven, Esq.
Craven Trade Law LLC
3744 N Ashland
Chicago, IL 60613
Phone: 773-245-4010
Email: david.craven@tradelaw.com

**On behalf of Jiaxing Haihong Mechanical and Electrical Technology Co., Ltd.**

Matthew T. McGrath, Esq.
Barnes Richardson & Colburn
1850 M Street NW, Suite 1060
Washington, DC 20036
Phone: 202-483-0070
Email: mmcgrath@barnesrichardson.com

**On behalf of NewAge Products Inc.**

Kristen Smith, Esq.
Sandler, Travis & Rosenberg, P.A.
1300 Pennsylvania Avenue NW, Suite 400
Washington, DC 20004-3002
Phone: 202-730-4965
Email: ksmith@strtrade.com

**On behalf of Hangzhou Xline Machinery & Equipment Company Ltd.**

Ronald M. Wisla, Esq.
Fox Rothschild LLP
1030 15th Street NW, Suite 380
Washington, DC 20005
Phone: 2024613100
Email: rwisla@foxrothschild.com

**On behalf of Hangzhou Evernew Machinery & Equipment Co., Ltd.,  Luoyang Hynow Import and Export Co., Ltd.**

Xiaohua Hou
Beijing Chang An Law Firm
F9/10, Zhongjian Building, No.18 Xibahe Dongli, Chaoyang District, Beijing, China
Phone: 8601084185889
Email: xiaohuahou@changanlaw.com

**On behalf of Whirlpool Corporation**

Thomas M. Beline
Cassidy Levy Kent (USA) LLP
900 19th Street, NW, Suite 400
Washington, DC 20006
Phone: 202-567-2316
Email: tbeline@cassidylevy.com

**On behalf of Ameziel, Inc.**

Chunlian Yang
Alston & Bird, LLP
950 F Street NW
Washington, DC 20004-1404
Phone: 757-814-7406
Email: lian.yang@alston.com

**On behalf of Trinity International Industries LLC**

Irene H. Chen
Chen Law Group LLC
200-A Monroe St., Suite 100
Rockville, MD 20850
Phone: 3017607393
Email: irene@chenlawgroup.com

**On behalf of Luoyang Shidiu Import and Export Co., Ltd.**

Ma Mengmeng
Luoyang Shidiu Import and Export Co., Ltd.
No. 16 Meiyin Street, Luolong, Luoyang City, Henan Province, China
Phone: 86-0379-63355858
Email: sale01@steelfurniturecn.com

**On behalf of Tianjin Jia Mei Metal Furniture Ltd.**
Tianquan Yu
Tianjin Jia Mei Metal Furniture Ltd.
South of Luqian Datian, Binhai New Area (Hanggu), Tianjin, China
Phone: 86-022-67229740
Email: yutianquan6722@163.com

**On behalf of Kunshan Dongchu Precision Machinery Co., Ltd.**

Zhou Weidong
Kunshan Dongchu Precision Machinery Co., Ltd.
No. 1188, Hua Yuan Road, Zhangpu Town, Kunshan City, Suzhou City, Jiangsu Province, China
Phone: 86-0512-50358652
Email: syqlg@126.com

**On behalf of Winholt Equipment Group**

Richard L Furman
Furman Law Offices, LLC
180 Froehlich Farm Blvd.
Woodbury, New York 11797
Phone: 917-373-9139
Email: rfurman@furmanlawoffices.com

    /s/ Kathleen W. Cannon
KATHLEEN W. CANNON
KELLEY DRYE & WARREN LLP